

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-20-2009

# Gerard McGroarty v. City of Wilkes-Barre

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2316

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Gerard McGroarty v. City of Wilkes-Barre" (2009). *2009 Decisions.* Paper 1841.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1841

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-2316

GERARD MCGROARTY,

Appellant

v.

CITY OF WILKES-BARRE; THOMAS LEIGHTON,
individually and in his official capacity as Mayor of the
City of Wilkes-Barre

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3-05-cv-02661)
District Judge: Honorable Edwin M. Kosik

Submitted Under Third Circuit LAR 34.1(a)
January 27, 2009

Before: SCIRICA, Chief Judge, AMBRO, and SMITH, Circuit Judges

Opinion filed: February 20, 2009

OPINION

AMBRO, Circuit Judge

When he became mayor of Wilkes-Barre, Pennsylvania in 1996, the brother of Gerard McGroarty created the Department of Facilities, Parks, and Recreation and appointed McGroarty Director. When Wilkes-Barre did not reelect McGroarty's brother, the new mayor eliminated McGroarty's position, dissolved that Department, and returned its responsibilities to the Department of Public Works (which had previously carried them out). McGroarty sued the mayor and City in 2005 under 28 U.S.C. § 1983 for terminating him based on his support for his brother's reelection in violation of the First and Fourteenth Amendments. The District Court granted summary judgment to the mayor and City on the ground that McGroarty's job was political. McGroarty timely appealed. We will affirm.

**Jurisdiction & Standard of Review**

The District Court had federal question jurisdiction under 28 U.S.C. § 1331 and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review. *Gonzalez v. AMR*, 549 F.3d 219, 223 (3d Cir. 2008). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

**Discussion**

The Supreme Court prohibits termination of a government employee based on political affiliation unless "party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti v. Finkel*, 445 U.S. 507, 518 (1980). The inquiry is "fact specific." *Waskovich v. Morgano*, 2 F.3d 1292, 1297 (3d Cir. 1993).

2

We consider whether the employee: has duties that are non-discretionary or non-technical; participates in discussions or other meetings; prepares budgets; possesses the authority to hire and fire other employees; has a high salary; retains power over others; and can speak in the name of policymakers. *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 271 (3d. Cir. 2007). "The key factor seems to be not whether the employee was a supervisor or had a great deal of responsibility, but whether she has meaningful input into decisionmaking concerning the nature and scope of a major program." *Id.* (internal quotation marks and brackets omitted). In deciding patronage cases, we seek to (1) protect "the individual's ability to act according to his beliefs," *Elrod v. Burns,* 427 U.S. 347, 355–56 (1976), and (2) prevent political parties from using patronage to coerce votes, *id.* at 356, while (3) ensuring that the top of government can use the bottom to implement policy, *id.* at 367.

The mayor's termination of McGroarty was not unconstitutional. The factors, as applied to the undisputed facts of this case, favor the mayor and City. McGroarty did not dispute that department heads are supposed to make policy and personnel decisions, advocate for the mayor and City, and propose a budget. *See* Wilkes-Barre Admin. Code § 5:04 & 5:05 (stating that department heads are subject to removal at the discretion of the mayor and defining the responsibilities of a department head). He argues that, despite this job description, his job was rote. His regular duties, he states, were to cut grass, remove garbage and graffiti, and schedule use of public recreational facilities. According to McGroarty, his brother, while mayor, micro-managed the Department of Facilities,

3

Parks, and Recreation, and gave McGroarty little discretion in exercising his duties, no control over hiring or firing, little control over the budget, and no role in setting Department priorities. But he does not dispute that, as Director, he created a five-year plan for the Department, attended weekly meetings with the mayor, directed a staff of about 175, and spoke to the public in the name of policymakers.

Our conclusion accords with the Supreme Court's policy of protecting the ability of elected leaders to implement policy. When a mayor creates a new department and names his brother to a leadership role in it (the duties of which at least theoretically include policymaking), the next mayor should be able to fire the brother. The former mayor created the impression (whether accurate or inaccurate) of nepotism. The new mayor needs to be able to distance himself from that image.

That the previous mayor allegedly chose to micro-manage the Department does not change our view. A mayor may choose not to use appointees for all of the functions their offices permit without thereby losing the ability to fire them for political reasons. *See Waskovich*, 2 F.3d at 1297 ("[W]e have focused our analysis on the functions of the public office in question and not the actual past duties of the particular employee involved.") (internal brackets and quotation marks omitted). In any case, McGroarty did significantly more than cut grass and book recreational facilities; among other things, he created a five-year plan and directed a large staff.

The Deputy Director of Public Works, who now holds "99%" of the functions that McGroarty once held, is a unionized employee subject to a collective bargaining

4

agreement. McGroarty argues that this shows that his job was not "political." But by revoking the departmental status of a particular government function and thereby ceasing to exercise direct supervision over it, a mayor can eliminate its political character even though he has not changed the day-to-day activities of those carrying out the function.

**Conclusion**

For the foregoing reasons, we will affirm the order of the District Court.